IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IAN MORDLE,
     Petitioner

No.  1: cv-00-1163

(Judge Kane)
(Magistrate Judge Durkin)

v.

IMMIGRATION & NATURALIZATION
   SERVICE
     Respondent

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FILED
SCRANTON

SEP 2 5 2000

PER _____
DEPUTY CLERK

<u>REPLY TO RESPONDENT'S ANSWER TO
ORDER TO SHOW CAUSE.</u>

## BACKGROUND

Ian Mordle is a citizen of Guyana who entered the United States as a lawful permanent resident on December 14, 1980. On May 12, 1994 Mr. Mordle was convicted of Attempted criminal possession of a Controlled Substance, 7th degree and was sentenced to one year probation. On March 31, 1995 Mr. Mordle was convicted of possession of a weapon and was sentenced to five (5) years probation. On Junary 13, 1997, Mr. Mordle was convicted in Adams Counrt, Pennsylvania, of burglery and was sentenced to imprisonment for (18) to (36) months.

On October 10, 1997, the INS charged Mr. Mordle with being removed for having deen convicted of a controlled substance violation under 8 U.S.C. 1227 (a)(2)(B)(i),8 U.S.C. 1227 (a)(2)(c) and 8 U.S.C. 1227 (a)(2)(A)(iii). On April 21, 1998, Mr. Mordle conceded his deportability and was ordered removed to his home country of Guyana, there was no appeal and the removal order became final.

On June 29, 1999, Mr. Mordle was placed in the custody of the INS, where he remains detained at the York County Prison. Mr. Mordle subsequently filed a petition under 28 U.S.C. 2241, for a writ of habeas corpus challenging the violation of the fifth amendment's prohibition against the deprivation of liberty without due process of law. Mr. Mordle asks this Court to adhere to such precedent and find that his prolonged detention deprives him of his most fundamental right. Mr. Mordle's country of Guyana selectively repatriates it's citizens when they are removed from the United States, and may not issue travel documents to some of it's citizens base d on their crimes, period of time absent from Guyana

(2)

these factors place him at a risk for a prolonged bordering on indefinate detention. The INS has sought travel documents from Guyana since July 12, 1999, to present, to no avail. See,(Exhibit A).

A.        THE STATUTORY AND REGULATORY PREVISIONS GOVERNING DETENTION PENDING DEPORTATION.

Under 8 U.S.C. 1226 (c) and 1231 (a)(1), the Attorney General must detain criminal aliens during removal proceedings and during the initial (90) days after the entry of a final order of removal. After the (90) days removal period the District Director, in the exercise of discretion, may relase from custody, an alien who demonstrates by a clear and convincing evidence that he/she is not a threat to the community and is likely to comply with the removal order when it can be executed. 8 C.F.R. 241.4 (1998).

IN NGO v. IMMIGRATION AND NATURALIZATION SERVICE, 192 (3rd. Cir. 1999) F. 3d 390 a policy guidelines was established that gave long term detainees automatic review of their custody after the experation of the removal period. The policy guidelines provide detainees an oppertunity to seek release from custody. As of filing of the writ of Habeas Corpus, Mr. Mordle had not received any reviews as claimed by the INS. Mr. Mordle has been in INS custody since June 29, 1999, and was entitled to as prescribed by regulation, a three month review and two six month review during this time period. Mr. Mordle 's constitution and due process rights has been violated, under 8 C.F.R. 241.4 and the third circuit's holding in NGO, as stipulated by the INS.

from custody must demonstrate by clear and convincing evidence that he/she is not a threat to the community and is likely to comply with the removal order when it can be executed.

It is pertinent to note that the Third Circuit in **NGO,** amended it's oponion to specify that it's holding was confined to excludeable aliens, ofering "no views" on whether the holding would apply to deportable aliens, 192 F.3d at 398 n.7. The Third Circuit found that aliens with criminal backgrounds could be detained for lengthy period provided that appropriate provision for perole were available, and further held that the interim procedures created by the INS, with its Bi-Annual reviews, including the oppertunity for an annual personal interview, satified due process. Mr. Mordle's rights to due process has been clearly violated, and his continued dentention pending deportation to Guyana violates his constitutional rights. See. (Exhibit B ( Post Order Custody Review Worksheet ) at p.1.)

The INS claims that Mr. Mordle was issued a filed review on March 13, 2000, See. (Exhibit C). Mr. Mordle never recieved a copy of the custody review, as can be seen, the custody review is addressed to Mr. Mordle at the Berk's County Prison, while Mr. Mordle was detained at the York County Prison. Mr. Mordle was not given the oppertunity to present favorable information to the reviewing officer. Mr. Mordle has numerous family members who are citizens or permanent residents living in the United States along with strong

(4)

community ties and a place to live which is not reported on his custody detention worksheet. Mr. Mordle's custody review worksheet is compiled of erroneous information which impacts wether he can be eligeble for release pending travel arrangements. It is well established that all persons who have entered and established residence in the United States, reguardless of citizenship or national origin, enjoy the protections of the fifth amendment's prohibition against the deprivation of liberty without due process of law.

### DEPORTABLE ALIENS ENJOY THE PROTECTIONS OF THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION

The government contends that the petitioner has been "assimilated" to the status of excludeable aliens citing <u>Shaughnessy v. United States ex rel. Mezei</u> 345 U.S. 206, 215 (1953). At such, according to the government, the petitioner no longer comes within the protection of the United States Constitution because his status of a lawfull permenent resident has been terminated. There is no authority to support the government's proposition.

First, the Supreme Court recognized long ago that deportable aliens, even those who are unlawfully present in the United States, are protected by the Constitution. <u>Yamataya V. Fisher</u>, 189 U.S. 86(1903). This holding has been repeated again and again by the Court without controversy. <u>Plyer V. Doe</u>, 457 U.S. 202(1982); <u>Mathews V. Diaz</u>, 426 U.S. 67(1976). As the court stated in <u>Plyer</u> "we have clearly held that the Firth Amendment protects (even) aliens whose presence in the country is unlawfull..."457 U.S. at 210.

Second the INS points to no authority to support it's ground-breaking legal theory. Instead the INS simply cites a case in which the Supreme Court invokes the concept of "assimilating" an alien's status to prevent the captions deprivation of a lawfull resident alien's Constitutional rights. <u>Mezei</u> 345.U.S. at 206, 215., and the Third Circuit ruling in <u>Ngo</u>, 192 F.3d at 394.

Unlike the petitioner in **Mezei**, the petitioner is not seeking admission to this country. Citing in part, 8 U.S.C. 1101 (a)(13) (defines "entry" into the United States as "any coming of an alien into the United States, from a foreign part or place or from an out laying possession....) The petitioner was lawfully admitted into the United States and was a longterm lawfull permanent resident of the United States. There is no evidence supporting the proposition that he should be treated as if " stopped at the border " **Mezei**, 345 U.S. at 215. Mr. Mordle is an "deportable alien", who unlike an excludable alien, has effectuated his entry.

Further, the decision in **Mezei and NGO** cited by the INS specifically rely upon the distinction between deportable and excludable aliens. See, e.g; **Mezei**, 345 U.S at 216 (excludable aliens, unlike resident aliens temporarily detained pending deportation proceedings, may not be released on bond because an exclusion proceeding presents different considerations); **Landon v. Plasencia** 459 U.S 21, 24-25(1982)(deportation hearings are means to remove aliens who have effected actual entry whereas, exclusion refers to proceedings against alien who are seeking inital admission into the United States); <u>Gisbert v. United States Atty. Gen</u>;988 F.2d 1437,1440(5th Cir.) as amended 997 F.2d 1122(5th Cir. 1993)(same); <u>Barrera-echavarria v. Rison</u> 44 F.3d 1441, 1450 (9th Cir.1995)(an alien's constitutional right change "once he gains admission to our country"); <u>Harisiades v. shaughnessy</u> 342 U.S. 580,586 n.9(1951)(aliens, like the petitioner, "in several respects stand on equal footing with citizens"including the scheme is utterly devoid of the fundamentel requirements of due process, i.e., an opportunity to be heard "at a meaningful time and in a meaningful manner. <u>Armstrong v. Manzo</u>,380 U.S. 545, 552 (1965). An impertial arbitrator, and a meaningful oppertunity to be heard would not unduly burden the INS.

For the reasons and authorities set forth above, curent INS custody procedures indefinitely deprive Mr. Mordle of his freedom in violation of procedural due process.

## CONCLUSION

For the above stated reasons, when it becomes clear

that the INS would not be able to carry out Mr. Mordle's deportation in the foreseeable future, Mr. Mordle's prolonged and indefinite detention violates his substantive and procedural due process right. Mr. Mordle respectfully request this court issue the writ, and grant his immediate release.

Respectfully submitted,

*Ian Mordle*
Ian Mordle

EXHIBIT A.

# POST ORDER CUSTODY REVIEW WORKSHEET FOR FILE REVIEW AND/OR INTERVIEW

Detainee Name: MORDLE, Ian Paul    Date of Birth: 11/24/72    "A" Number: 36 476 325

AKAs: Mordle, E                    BOP Number:

Country of Birth:   Guyana          Citizenship:   Guyana

Date of Arrival:    12/14/80        Place of Arrival:   New York, NY

Manner of Arrival:  Immigrant       Last Date into INS Custody:   06/29/99

Entered INS Custody from:    ☐ Local  ☑ State  ☐ Federal Institution
                             ☐ Other

Location:   SCI Camp Hill           Institution Number: DE-3828

Immigration History: (Prior INS arrest[s]/parole/bond/custody information)

   Describe:   Custody determination of 10/06/97, detained in custody of Service

Deportation Officer: Timothy J. Sharon            Date of Review: 04/03/00

Location Detained:  York County Prison

## Deportation/Exclusion/Removal Proceedings

List all Charges:    ☑ Section 237 (a) (2)(B)(i),(2)(C),(2)(A)(iii)
                     ☐ Section 212 (a)   ,   ,
                     ☐ Section 241       ,   ,

☐ Under Final Order dated April 21, 1998 by ☑ IJ  ☐ BIA  ☐ Other

☑ Appeal Waived/Appeal Time Elapsed

Travel Document Status/History:

TD requested from Consulate General of Guyana (NYC) on 07/12/99, Request for assistance made to HQOPS / DDP on 12/06/99, follow up to HQOPS / DDP made on 01/24/00.

EXHIBIT B.

# POST ORDER CUSTODY REVIEW WORKSHEET FOR FILE REVIEW AND/OR INTERVIEW

Detainee Name: MORDLE, Ian Paul    Date of Birth: 11/24/72    "A" Number: 36 476 325

AKAs: Mordle, E    BOP Number:

Country of Birth:    Guyana    Citizenship:    Guyana

Date of Arrival:    12/14/80    Place of Arrival:    New York, NY

Manner of Arrival:    Immigrant    Last Date into INS Custody:    06/29/99

Entered INS Custody from:    ☐ Local  ☑ State  ☐ Federal Institution  ☐ Other

Location:    SCI Camp Hill    Institution Number: DE-3828

Immigration History: (Prior INS arrest[s]/parole/bond/custody information)

    Describe:    Custody determination of 10/06/97, detained in custody of Service

Deportation Officer: Timothy J. Sharon    Date of Review: 04/03/00

Location Detained:    York County Prison

## Deportation/Exclusion/Removal Proceedings

List all Charges:    ☑ Section 237 (a)  (2)(B)(i),(2)(C),(2)(A)(iii)
    ☐ Section 212 (a)    ,    ,
    ☐ Section 241    ,    ,

☐ Under Final Order dated April 21, 1998 by ☑ IJ ☐ BIA ☐ Other

☑ Appeal Waived/Appeal Time Elapsed

Travel Document Status/History:

TD requested from Consulate General of Guyana (NYC) on 07/12/99, Request for assistance made to HQOPS / DDP on 12/06/99, follow up to HQOPS / DDP made on 01/24/00.

## Legal Representative / Attorney

G-28 Filed:   ☐ Yes   ☑ No

Legal Rep/Atty. Notified of Interview:   ☐ Yes   ☑ N/A   by:
on:

Name of Representative / Attorney:   N/A

Mailing Address:              Telephone Number:

Present during interview:   ☐ Yes   ☑ No

## Criminal History

**Outside the United States:** Unknown
(specify nature of crime, whether convicted, sentence imposed, date, and country)

**In the United States:** Criminal possession of weapon, convicted Kings CO. NY, 5 years probation 03/31/95. Criminal possession of a controlled substance, convicted Kings CO, NY, 1 year 05/12/94. Burglary, Criminal Trespass, Theft, convicted, Adams CO, PA, 18 MO -36 MO on 01/13/97.

NCIC Checks:   ☑ Criminal History   ☐ No record Found
                (State and Federal)
FBI# 357765TA2                                    SID# NY 6709033P
    Summary of NCIC Checks:   See Above

## Institutional / Disciplinary Record

Did the detainee have prior Disciplinary Reports?   ☐ Yes   ☑ No

    If Yes, List & Describe:   Unknown, no record in A file

    Source:

Disciplinary reports and Incidents while in INS Custody?   ☑ Yes   ☐ No

    If Yes, List & Describe: On 08/12/99, detainee was found to be making alcohol in his cell. On 08/16/99, detainee admitted guilt at review hearing and given 30 days in BAU.

On 08/12/99, detainee and another were destroying county property. On 08/16/99, detainee was found guilty of not reporting incident.

## Specifics of Interview

Date of File Review:    04/03/00

Date of Detainee Interview: N/A

Location of Interview:    N/A

Interviewing Officer:#1:    N/A

    #2:    (optional)

Interpreter Used:    ☐ Yes    ☐ No    Name:
Language/Dialect:

---

Does the detainee have a place to live in the United States?    ☐ Yes    ☒ No

    Address:    Unknown, alien did not provide any information

Is the detainee subject to any parole or probation requirements?    ☒ Yes    ☐ No

    Describe:    On parole in PA

Does the detainee have close family ties within the United States?    ☒ Yes    ☐ No

    Describe:    Both parents reside in NY State

Does the detainee have any community ties or non-governmental sponsors?
    ☐ Yes    ☒ No

    Describe:    N/A

Does the detainee have any employment prospects?    ☐ Yes    ☒ No

    Describe:    N/A

What is the detainee's employment history?

    Describe:    Unknown, none provided

What is the detainee's educational level?

    Describe:    Unknown no information provided

Does the detainee have any vocational training?

    Describe:    Unknown, no information provided

Page 3

The INS detainee was found ☐ **CREDIBLE**     ☐ **NOT CREDIBLE**
Explain: N/A

## Officer Comments/Analysis & Recommendation

Mordle has been convicted on three separate occasions for weapons, drugs and burglary. While detained at YCP he was found making alcohol in his cell and acted as a look out for a fellow detainee who was breaking out the window in his cell. A written notice of this review was sent to Mordle via the prison mail on 03/13/00, as of this report date, 04/03/00 the detainee has not provided any information to review on his behalf.

Based on the seriousness of Mordle's convictions and his disciplinary record while detained at York County Prison, I recommend that Mordle remain in detention pending the issuance of travel documents or until his next post order interview.

Interviewing Officer #1:
Timothy J. Shearon

Date: APR 0 3 2000

(**Detain**)   Release

Interviewing Officer #2:
(optional)
Reviewed by:

Date: 4/4/00

Detain   Release

(**Concur**)   Do Not Concur

## DISTRICT DIRECTOR'S CUSTODY DETERMINATION

☐ RELEASE FROM CUSTODY / ORDER OF SUPERVISION

☐ RELEASE FROM CUSTODY / ORDER OF SUPERVISION UNDER BOND

    Bond Amount: _____

☒ CONTINUE IN CUSTODY / SCHEDULE FOR REVIEW IN SIX MONTHS

Comments (attach additional sheet(s) if necessary):


INS District Office: _____PHI_____

Signature of District Director:  _[signature]_  Date: 4-12-00
or of Designee (ADD, DADD)
THEODORE R. NORDMARK
ASSISTANT DISTRICT DIRECTOR
DETENTION AND DEPORTATION
(Printed Name & Title)

## *HEADQUARTER'S REVIEW OF CONTINUED DETENTION*

| Reviewing Officers | Concur | Reconsider | Date |
|---|---|---|---|
| (Name, Title, Signature) | | | |
| (Name, Title, Signature) | | | |
| (Name, Title, Signature) | | | |

For comments, please refer to the "Headquarters Post Order Custody Review" form.

EXHIBIT C.

AUG-14-2000 16:35        INS DISTRICT COUNSEL                    215 656 7148    P.08/08



**U.S. Department of Justice**
Immigration and Naturalization Service

1600 Callowhill Street
Philadelphia, PA 19130

Ian Paul MORDLE
C/O Berks County Prison
RD#1 Box 265
Leesport, PA 19533

A#36 476 325

## *Notice to Alien of File Custody Review*

You are detained in the custody of the Immigration and Naturalization Service (INS) and you are required to cooperate with the INS in effecting your removal from the United States. If the INS has not removed you from the United States within the removal period as set forth in INA 241(a) (normally 90-days) of either: 1) your entering INS custody with a final order of removal, deportation or exclusion, or 2) the date of any final order you receive while you are in INS custody, the INS District Director will review your case for consideration of release on an Order of Supervision. Release, however, is dependent on your demonstrating by "clear and convincing evidence" that you will not pose a danger to the community and will not be a significant flight risk.

Your custody status will be reviewed on or about: (April 3, 2000). The District Director may consider, but is not limited to considering the following:

1. The nature and seriousness of your criminal convictions;
2. Other criminal history;
3. Sentence(s) imposed and time actually served;
4. History of escapes, failures to appear for judicial or other proceedings, and other defaults;
5. Probation history;
6. Disciplinary problems while incarcerated;
7. Evidence of rehabilitative effort or recidivism;
8. Equities in the United States;
9. Prior immigration violations and history; and
10. Cooperation in obtaining your travel document.

You may submit any documentation you wish to be reviewed in support of your release, prior to the date listed above, to the attention of the Officer and address below. English translations must be provided pursuant to 8 CFR 103.2(b)(3). An attorney or other person may submit materials on your behalf.

U.S. Department of Justice
**Immigration and Naturalization Service**
Attn.: Timothy J. Shearon, Deportation Officer
3400 Concord Road
York, PA 17402

---

METHOD OF SERVICE

I certify that this form was provided to the alien by:        (Hand)        (Institution Mail)
( ) CC: Attorney of Record or Designated Representative
(X) CC: A-file

_____        TIMOTHY J. SHEARON        MAR 13 2000
Signature of Officer              Print Name of Officer        Date